U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR 27 2018
CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JIMMY BERNARD BILLINGSLEY, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:16-CV-1129-A |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Jimmy Bernard Billingsley, a state prisoner confined in the Correctional institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I. BACKGROUND

The state court records reflect that in May 2011 petitioner was charged in a multi-count indictment in Tarrant County, Texas, Case No. 1235745D, with aggravated assault with a deadly weapon, his bodily fluids containing the HIV virus, by intentionally or knowingly causing serious bodily injury to Q.S., a person that he was involved in a dating relationship, by engaging in unprotected sexual contact with her and causing her to contract HIV (count

one); aggravated assault with a deadly weapon, his bodily fluids containing the HIV virus, by intentionally, knowingly, or recklessly causing bodily injury to Q.S. by engaging in unprotected sexual contact with her and causing her to contract HIV (count two); aggravated assault with a deadly weapon, his bodily fluids containing the HIV virus, by intentionally, knowingly, or recklessly threatening imminent bodily injury to Q.S. by engaging in unprotected sexual contact with her (count three); aggravated assault by intentionally, knowingly, or recklessly causing serious bodily injury to Q.S. by engaging in unprotected sexual contact with her and causing her to contract HIV (count four); and aggravated assault by intentionally or knowingly assaulting Q.S. causing serious bodily injury to her by engaging in unprotected sexual contact with her and causing her to contract HIV (count five).[1] (SHR[2] 75-77, doc. 10-17.) *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1)-(2), 22.02(a)(1)-(2) (West 2011 & Supp. 2014). The indictment also included a deadly weapon notice alleging that petitioner's HIV-infected bodily fluids and his penis were used in a manner capable of causing death or serious bodily injury.

---

[1] It appears as though the indictment was amended to include count five, however an indictment need not be amended or altered to support a conviction for a lesser-included offense under state law. *See Puente v. State,* 320 S.W.3d 352, 357 n.15 (Tex. Crim. App. 2010).

[2] "SHR" refers to the state court record of petitioner's state habeas-corpus proceeding in No. WR-85,933-01.

On December 28, 2012, petitioner entered an open plea of guilty to count five of the indictment and the trial court assessed his punishment at 15 years' confinement. (Id. at 78-83.) Petitioner appealed his conviction, but the Eleventh District Court of Appeals of Texas affirmed the trial court's judgment and the Texas Court of Criminal Appeals refused his petition for discretionary review. (Docket Sheet 2, doc. 10-15.) Petitioner also filed a post-conviction state habeas-corpus application challenging his conviction, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court. (Action Taken, doc. 10-16.)

## II. ISSUES

Petitioner's grounds for relief are construed as follows:

(1)  the indictment was void;

(2)  the aggravated assault statute was unconstitutionally broadened;

(3)  he received ineffective assistance of trial counsel;

(4)  enforcement of the aggravated assault statute "abridged" his federal constitutional rights;

(5)  he was wrongfully convicted of a nonexistent crime under state law;

(6)  there was no evidence or insufficient evidence that Q.S. was infected by him;

(7)  no indictment was issued for the lesser-included offense, which was barred by the statute of limitations;

(8)  the verdict is contrary to the law and the

3

evidence;

(9) evidence tending to establish his innocence was destroyed or withheld; and

(10) appellate counsel committed material error.

(Pet. 6-7 & Attach., doc. 1.)

### III. RULE 5 STATEMENT

Respondent does not believe that the petition is successive or time-barred but does believe that one or more of petitioner's claims are procedurally-barred from the court's review. (Resp't's Answer 4, doc. 11.)

### IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be

4

correct. It is the petitioner's burden to rebut the presumption of correctness through clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V. DISCUSSION

### 1. Void Indictment

Under his first ground, petitioner claims the indictment was void and the trial court lacked jurisdiction because "it would've been impossible for any reasonable person to have enough clarity or specificity to identify the penal statute charged" under count five.[3,4] (Pet. 6, doc. 1.) Respondent contends, among other things, that the claim raises no issue upon which federal habeas relief may be granted. (Resp't's Answer 5-6, doc. 11.)

It is well settled that the sufficiency of a state indictment is not a matter for federal habeas-corpus relief unless it is shown that the indictment is so defective that it deprives the convicting court of jurisdiction. *See McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994). If the highest state court has found the indictment sufficient under state law, a

---

[3]To the extent petitioner raises new legal theories and/or factual issues in support of his claims for the first time in his traverse (reply brief) to Respondent's answer to his petition, they need not be considered on federal habeas review. *See United States v. Sangs*, 31 F. App'x 152, 2001 WL 1747884, at *1 (5th Cir. Dec.11, 2001) (affirming, in § 2255 context, district court's refusal to consider issue raised for the first time in reply to government's answer to habeas petition) (citing *United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998)).

[4]Petitioner also claims that the indictment was "executed" and/or "altered" in violation of state law. This claim, however, is not cognizable on federal habeas review. *See Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

5

federal court need not address the issue. *See Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985). The sufficiency of the indictment in this case was squarely presented to the Texas Court of Criminal Appeals in petitioner's state habeas application and the court adopted the trial court's express findings that the indictment was not vague and provided petitioner with notice of the charged offense. (SHR 52, doc. 10-17.) Thus, the issue is foreclosed to federal habeas review.

2. **Constitutional Claims**

Under his second and fourth grounds, petitioner claims that the aggravated assault statute was unconstitutionally broadened as applied to him and "abridges" his federal constitutional rights under the privileges and immunities, due process, and equal protection clauses. (Pet. 6-7, doc. 1.) Respondent asserts that petitioner's guilty plea waived his constitutional claims or, in the alternative, that the claims are procedurally barred from federal habeas review. (Resp't's Answer 6-11, doc. 11.) It is well established that a knowing and voluntary guilty plea is conclusive as to a defendant's guilt and waives all nonjurisdictional defects in the proceedings preceding the plea, including constitutional ones, that do not implicate the voluntariness of the guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Because petitioner's guilty plea was voluntarily and knowingly made, *see infra*, petitioner's constitutional claims

are waived. *See Parke v. Raley,* 506 U.S. 20, 29 (1992); *United States v. Broce,* 395 U.S. 563, 569-70 (1989); *United States v. Boykin,* 395 U.S. 238, 243 (1969).

### 3. Ineffective Assistance of Trial Counsel

Under his third ground, petitioner claims that he received ineffective assistance of trial counsel because counsel—

- failed to investigate;
- improperly advised him to plead guilty when there was no factual basis that a criminal law had been violated;
- failed to object to "obvious, plain or fundamental errors";
- failed to communicate with him;
- failed to move for a speedy trial;
- deprived him of the right to confront and cross-examine his accuser; and
- coerced him into signing the plea papers.

(Pet. 7, doc. 1.)

Petitioner was represented at trial by Abe Factor who submitted an affidavit in the state habeas proceeding, wherein he responded to petitioner's allegations as follows:

> I represented [petitioner] for the trial of his aggravated assault case before presiding judge Robb Catalano in Criminal District Court Number Three of Tarrant County. Specifically, Billingsley was charged with infecting the complainant with the HIV virus. . . .
>
> In his Application for Writ of Habeas Corpus, [petitioner] has alleged in Grounds Three, Four and Five that he received ineffective assistance of counsel at trial.
>
> **In reference to Ground Number Three of [petitioner]'s Application for Writ of Habeas Corpus, I respond as follows:**

[Petitioner] complains that I should not "have advised him to plead guilty due to a lack of factual basis" and that I "failed to determine whether the law was established or if he was guilty." [Petitioner] was initially indicted for aggravated assault with a deadly weapon. The evidence possessed by the State showed that [petitioner] had unprotected sexual intercourse with the complainant while knowing that he was HIV positive. My research showed that Texas case law did in fact support such a charge on the facts present here.

I advised [petitioner] of the extent of the prosecution's evidence and the state of the law regarding such cases, but also informed him that the decision whether to go to trial or enter an open plea to the trial court was his decision alone. Further, in return for the open plea to the trial court, I was able to extract an agreement from the State to waive the deadly weapon allegation included in the indictment-a decided benefit to [petitioner] in his plea to the court as he would thereby at least be eligible for a grant of community supervision from the trial court.

[Petitioner] further appears to complain in Ground Three that I mislead [sic] him regarding the nature of his open plea, and that he believed that he was actually going to have a trial by judge. However, the record from the plea hearing held on October 12, 2012, shows that [petitioner] was fully admonished as required by Texas law regarding his open plea and the extent of the rights he was waiving by entering that plea. Moreover, the trial court was required to find that [petitioner]'s plea was knowing and voluntary, and in fact the trial court did so.

[Petitioner] additionally complains in Ground Three that I "didn't inquire to any defense," "wasn't prepared," and allowed "sealed" and "expunged" records to be entered at trial. However, the record shows that in preparation for trial, I filed numerous motions on behalf of [petitioner], including two separate motions to suppress, in an effort to exclude damaging evidence possessed by the State-including [petitioner]'s own statements which were highly incriminatory. Further, during the pendancy of [petitioner]'s case, I conferred numerous times with him regarding his case, both at my office and during the periodic court appearances. We discussed the nature and scope of the State's evidence,

8

as well as any potential defenses which might be available. Problematically, the State had in its possession persuasive compelling evidence in the form of [petitioner]'s medical records from the Veteran's Administration, which conclusively showed that [petitioner] had been diagnosed as HIV positive long before infecting the complainant, and that he was therefore well aware of his HIV positive status prior to the offense. Moreover, the State's evidence showed that there were numerous other women whom [petitioner] had infected. Evidence of these extraneous offenses which would in all likelihood have been admissible against [petitioner] at trial to show knowledge, intent, lack of mistake or common plan.

In reference to [petitioner]'s complaints regarding an investigator or an expert, in my professional opinion there was no evidence or viable defense which would be facilitated by the retention or use of an expert. Nor in my professional opinion was an investigator needed under the circumstances present of this case. The most damaging evidence was admissible, clear and straightforward; and the various motions which I filed-including two motions to suppress-relied on argument focused on matters of law in an effort to convince the trial court to exclude the most damaging and impactful evidence.

Additionally, although Billingsley accurately states in Ground Three that I wasn't able to interview the State's witness, under Texas law the state's witnesses aren't required to speak with defense attorneys or investigators prior to trial.

Finally, at no time did I demand that [petitioner] sign any plea papers under threat that "I would sign for him and he would be put away that day." First, Texas law does not provide for such a practice, as an attorney cannot sign a felony plea admonishment on behalf of his client; second, the trial court colloquy which occurs in every Texas felony guilty plea requires that the defendant himself responds orally to the trial court, thus ensuring that the defendant does in fact wish to enter his guilty plea.

**In reference to Ground Number Four of [petitioner]'s Application for Writ of Habeas Corpus, I respond as follows:**

9

[Petitioner] appears to complain that I failed to request a speedy trial between the time of his original arrest on April 4, 2011 for aggravated assault and the date of his sentencing hearing held on December 28, 2012.

However, at no time during the pendancy of [petitioner]'s case did he ever articulate a desire for speedy trial. Moreover, during that time period, he agreed with my assessment that delay in this case would be more beneficial to the defense than the State.

He further complains that he failed to receive timely advance notice of his sentencing hearing, so that he was unable to secure the presence of witnesses to testify on his behalf at that hearing.

On the contrary, [petitioner] was fully aware of the date of his December 28, 2012 sentencing hearing. From the time of his plea admonishment hearing on October 12, 2012, I met with [petitioner] often, not only for his PSI interview, but also to plan for our presentation and argument at the upcoming sentencing hearing. Additionally, during our consultations specific to any witnesses who might be willing to testify on [petitioner]'s behalf at the hearing, he failed to identify any such witnesses. Had [petitioner] identified any witnesses who could testify beneficially for him at sentencing, I would have interviewed those witnesses and taken steps to ensure their attendance and presentation at the hearing.

[Petitioner] also complains in Ground Four that he was never informed of the agreement with the State regarding his open plea to the trial court; the extent of the rights he was waiving pursuant to that plea; that he was mislead [sic] as to the nature of the offense to which he was pleading; and, that his plea was therefore not knowingly and intelligently entered. However, he does admit that he was made aware that the deadly weapon allegation would be waived by the State-which in fact it was. Moreover, the record shows that [petitioner] was fully admonished in writing regarding his open plea, as evidenced by his signatures on the Plea Agreement, Written Waiver of Rights, Judicial Confession, and Application for Community Supervision. Further, as mentioned above in response to Ground Three, the record from the plea hearing held on

October 12, 2012, shows that [petitioner] was fully admonished as required by Texas law regarding his open plea and the extent of the rights he was waiving by entering that plea. Moreover, the trial court was required to find that [petitioner]'s plea was knowing and voluntary, and in fact the trial court did so.

**In reference to Ground Number Five of [petitioner]'s Application for Writ of Habeas Corpus, I respond as follows:**

To the extent that [petitioner] claims that he was never shown the PSI compiled in this case, the record shows otherwise. At the beginning of the sentencing hearing, the trial court inquired as to whether [petitioner] had an opportunity prior to the hearing to examine the PSI and discuss it with his attorney, to which he responded affirmatively. To the extent that [petitioner] claims that I stated that it was "obvious" that the complainant could have contracted HIV independent from her sexual contact with [petitioner], such a statement would fall under the category of "argument" in an attempt to persuade the court rather than a sworn representation of fact.

In reference to [petitioner]'s complaint that I didn't consult with him about whether he "wanted to keep his plea of guilty" regarding the argument that the complainant could have independently contracted HIV, at the time this argument was made at the sentencing hearing held on December 28, 2015, [petitioner] had already entered his guilty plea over two months prior at the plea hearing held on October 12, 2015. Not only did [petitioner] not manifest a desire in any way to withdraw his plea, but there was not any right to do so; such a plea withdrawal request at that point in time would have been entertained solely at the discretion of the trial court, and such requests are seldom granted-had Billingsley ever exhibited any desire to make such a request to the trial court.

[Petitioner] also complains that I failed to challenge the indictment in his case on the grounds that it violated the constitution. However, in the present case the indictment contained the essential elements of the offense of aggravated assault sufficient to provide him with the ability to prepare

11

his own recollection of the trial court proceedings, the state habeas judge entered factual findings, too numerous to list here, refuting petitioner's ineffective-assistance claims, including the following findings relevant to the voluntariness of his plea:

> 29. Mr. Factor discussed with [petitioner] his legal options of pursuing a plea bargain agreement, entering an open guilty plea before the trial court, or proceeding to a jury trial.
>
> 30. Mr. Factor was unable to obtain any plea bargain offer from the State which recommended community supervision.
>
> 31. Mr. Factor did extract an agreement from the State that, if [petitioner] entered an open guilty plea, the State would waive the deadly weapon allegation which would make [petitioner] eligible to receive community supervision from the trial court.
>
> . . .
>
> 33. Mr. Factor informed [petitioner] that it was his decision alone whether to enter a guilty plea or proceed to trial.
>
> 34. [Petitioner] made the decision to enter an open guilty plea to the trial court.
>
> 35. Mr. Factor did not coerce [petitioner] into entering an open guilty plea.
>
> 36. Prior to accepting [petitioner]'s guilty plea, the trial court fully admonished him regarding the waiver of his rights and the consequences of that plea.
>
> 37. The trial court's written plea admonishments tracked the statutory requirements for accepting a plea that is freely and voluntarily entered.
>
> 38. [Petitioner] signed that he read and understood the written plea admonishments given to him by the Court.

his defense. A charging instrument that tracks the statutory text of an offense is sufficient to provide a defendant with adequate notice.

[Petitioner] further complains in Ground Five that his rights to privacy, freedom of speech, and procedural due process rights were violated. Problematically, these complaints are devoid of any facts in support, rendering a response merely theoretical. However, since such complaints don't appear to allege ineffective assistance of counsel at trial, this brief response is sufficient.

Finally, [petitioner] complains of a conflict of interest on my part due to the fact that I was retained by [petitioner] to represent him at trial, but appointed by the trial court to represent him on appeal. While it's accurate that once the trial proceeding was terminated I did move to withdraw, I did so only because the proceeding for which I had been retained had ended.

The trial court had sentenced [petitioner] to 15 years incarceration, rendering him indigent for the purposes of appellate proceedings. Under the rules applicable to attorney appellate appointments for appeals in Tarrant County, the trial court found good cause to appoint me to represent [petitioner] on appeal. At no time did [petitioner] ever complain that I had been appointed by the trial court to represent him on appeal. Although he now references a conflict of interest, he does not identify where that alleged conflict arises.

In closing, this case was a situation where the fact pattern was decidedly unsympathetic to the defense. I was able to negotiate with the State for a waiver of the deadly weapon allegation. Our strategy to present a viable case for probation from the trial court was ultimately unsuccessful, although the court did not assess a maximum sentence, although the sentence was completely discretionary with the trial court. That [petitioner] is unhappy with the result of his trial is understandable. However, such unhappiness does not render my representation ineffective.

(SHR 36-42, doc. 10-17 (footnotes and citations omitted).)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI. To prevail on an ineffective assistance claim in the context of a guilty plea, a defendant must demonstrate that his plea was rendered involuntary by showing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *See Hill v. Lockhart,* 474 U.S. 52, 56-59 (1985); *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir. 1983); see also *Strickland v. Washington,* 466 U.S. 668, 687 (1984). However, as noted above, once a knowing and voluntary guilty plea has been entered by a criminal defendant, all nonjurisdictional defects in the proceedings preceding the plea are waived, including all claims of ineffective assistance of counsel, that do not attack the voluntariness of the guilty plea. *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir. 1983); *Bradbury v. Wainwright,* 658 F.2d 1083, 1087 (5th Cir. 1981). The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to a defendant. *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford,* 400 U.S. 25, 21 (1970)).

Based on the documentary record, counsel's affidavit, and

39. [Petitioner] signed that he was aware of the consequences of his guilty plea.

40. [Petitioner] signed that he was satisfied with the representation of his attorney, and that his attorney had provided fully effective and competent representation.

41. [Petitioner] waived all rights given to him under law, including his right to the appearance, confrontation and cross-examination of witnesses, and consented to oral and written stipulations of evidence.

42. Mr. Factor reviewed the plea paperwork with [petitioner], including the court admonishments and waiver of rights, before he entered his guilty plea.

43. Mr. Factor did not demand that [petitioner] sign the plea paperwork or threaten to sign it for him.

44. [Petitioner] signed and entered a judicial confession admitting all the allegations alleged in the indictment.

45. [Petitioner]'s guilty plea was freely, knowingly and voluntarily entered.

. . .

55. [Petitioner] never advised Mr. Factor before the sentencing hearing that he wished to withdraw his guilty plea.

. . .

57. [Petitioner] presents no evidence suggesting that he would have rationally proceeded to trial or that the outcome of his prosecution would have been different with counsel other than Mr. Factor.

58. There exists no reasonable probability that [petitioner] would have rationally proceeded to trial or that the outcome of his prosecution would have been different with counsel other than Mr. Factor.

(Id. at 59-62 (record references and citations omitted.)

Having adopted the trial court's findings, the Texas Court of Criminal Appeals denied relief. Petitioner fails to rebut the state courts' factual findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Thus, deferring to the state courts' findings, and applying the presumption of correctness, regularity, and verity that are afforded guilty plea documents and the representations of a defendant during a guilty-plea proceeding, the state courts' rejection of petitioner's involuntary-guilty-plea claim is not contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court, nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state habeas proceeding. Petitioner was informed of his alternative choices of action, had notice of the charges against him, understood the constitutional protections waived, and had access to the advice of competent counsel. The remainder of petitioner's ineffective-assistance claims involve alleged acts or omissions by counsel occurring prior to petitioner's plea; thus, his voluntary guilty plea waived the claims.

4. **Remaining Claims**

Petitioner admits that he raises his remaining claims under grounds five through ten for the first time in this federal

petition, allegedly based on newly discovered evidence. (Pet. 8, doc. 1.) Applicants seeking habeas-corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). Having reviewed the substance of the claims, they could have been raised in petitioner's state habeas application but were not. Because they were raised for the first in this petition, the claims are unexhausted. Under the Texas abuse-of-the-writ doctrine, however, petitioner cannot now return to state court for purposes of exhausting the claims. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 (West 2015). The abuse-of-the-writ doctrine represents an adequate state procedural bar to federal habeas review. *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997).

Actual innocence, if proved, can overcome a procedural default such as the failure to exhaust at the state-court level by a first-time filer under §2254 if he presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Schlup v. Delo*, 513 U.S. 298, 316 (1995). A petitioner who seeks to surmount a procedural default through a showing of "actual innocence" must support his allegations with "new, reliable evidence" that was not presented

17

at trial and must show that it was more likely than not that, in light of the new evidence, no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt. *Schlup,* 513 U.S. at 329.

Under his ninth ground, petitioner claims that "evidence tending to establish [his] innocence has been intentionally destroyed or withheld thus preventing it's production at trial." (Pet. Insert, doc. 1.) If petitioner intended this argument as an actual-innocence claim, he waived such a claim by entering a voluntary and knowing guilty plea to the offense for which he was convicted. *McQuiggin,* 133 S. Ct. at 1928. *See also United States v. Vanchaik-Molinar,* 195 Fed. App'x 262, 2006 WL 2474048, at *1 (5th Cir. 2006) ("A voluntary guilty plea waives all non-jurisdictional defects that occurred prior to the plea and precludes consideration of a claim challenging the sufficiency of the evidence."). Even if *McQuiggin* applies in the context of a guilty plea, petitioner has not made a credible showing that he is actually innocent of the crime in light of "new evidence." Although petitioner does not specify what the "newly discovered evidence" is, it appears he may be referring to evidence that Q.S. "mentioned" another suspect (ground nine). (Pet. Insert, doc. 1.) The record reflects that before petitioner entered his plea, the state divulged the following information to the trial court:

18

> I had a phone call yesterday afternoon, a conversation with the victim in this case, [Q.S.], discussing with her the possibility of a plea and getting her feelings on it. . . .
>
> And in having that conversation with her she mentioned to me that at one point she talked to someone who she believes her name is Onyetta . . . Clarke at the Aids Outreach Center, who was a peer advocate there. She knew that this person was not properly maintaining client confidentiality there. And this lady asked her who she got HIV from? And, the victim said she made up a name, just because she didn't want to tell her her business – tell this lady her business, and it was a false name and she gave that to her.
>
> I revealed that to Mr. Factor almost as soon as I hung up the phone. I made a phone call to his office, revealed it to his staff, and then to him in a phone call slightly later that afternoon, the contents thereof. But I did want to put it on the record that that was revealed as potential Brady prior to coming to court this morning.

(Reporter's R., vol. 3, 5-6, doc. 10-13.)

Notwithstanding this information, petitioner persisted in pleading guilty. Thus, the evidence is not newly discovered as petitioner was well aware of the information at the time of trial. Nor is the information so strong as to establish petitioner's innocence.

For the reasons discussed herein,

The court ORDERS that the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied and that a certificate of appealability be, and is hereby

19

denied. The court further ORDERS that any pending motions not previously ruled upon be, and are hereby, denied.

SIGNED April 27, 2018.

/s/ John McBryde
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE